# In the United States Court of Federal Claims

No. 17-166C
(Filed: June 16, 2023)
**NOT FOR PUBLICATION**

```
***************************************
DAVID BOLAND, INC.,                    *
                                       *
              Plaintiff,               *
                                       *
v.                                     *
                                       *
THE UNITED STATES,                     *
                                       *
              Defendant.               *
                                       *
***************************************
```

## OPINION AND ORDER

Plaintiff David Boland, Inc. ("Boland") contracted with the U.S. Army Corps of Engineers ("Corps") to build infrastructure supporting a planned aviation complex at Wheeler Army Airfield in Oahu, Hawaii. The Corps ordered Boland to remove and replace non-conforming work at Boland's expense. Boland claims that the Corps' order was economically wasteful, and so seeks recovery of the costs of replacing its original work. The government has moved for leave to reopen discovery and serve a new expert report. *See* Def.'s Mot. (ECF 86); Proposed Report (ECF 88). Boland opposes the motion. *See* Pl.'s Resp. (ECF 94); *see also* Def.'s Reply (ECF 97). The motion is **DENIED**.

I assume familiarity with the facts, but in a nutshell, the relevant procedural history is as follows. Discovery ended in March 2019. *See* Order (ECF 35). The parties filed cross-motions for summary judgment, which I denied in August 2022. *See* Opinion & Order (ECF 80). In the summary judgment opinion, I identified economic aspects of the dispute that the briefing and evidentiary record did not directly address. *Id.* at 9–11. When the parties filed a joint status report the next month, the government represented that it intended to seek leave to reopen discovery to introduce the opinions of an economics expert. *See* Status Report (ECF 81). The government anticipated filing its motion "by October 14, 2022, with response and reply due in the normal course." *Id.* After discussing the government's plans with the parties at a status conference, I noted in a September 20 Order that although "progress toward trial is generally preferable to additional discovery after motions for summary judgment are resolved … [i]f the Government still wishes to reopen expert

discovery after obtaining the expert's opinions, the Court will entertain such a motion at the appropriate time." *See* Order (ECF 82). The government filed its motion on May 17, 2023, seven months later than expected. *See* Def.'s Mot. Trial has been calendared for August of this year, just over two months from now. *See* Order (ECF 93).

The government's proposal to reopen discovery would require modification of this Court's scheduling order. Under RCFC 16(b)(4), scheduling orders may be modified "only for good cause." In applying that standard, this Court has considered the movant's diligence and the possibility of prejudice to the other party. *See, e.g.*, *MorphoTrust USA, LLC v. United States*, 132 Fed. Cl. 419, 420–21 (2017).[1] Viewed from a different angle, under RCFC 37(c)(1) a party cannot use a late-filed expert report "unless the failure [to timely disclose] was substantially justified or is harmless." Both rules have sometimes been applied using multi-factor balancing tests looking to the importance of the proffered evidence, the reason the evidence was not disclosed earlier, the prejudice that might result from permitting use of the evidence, and the possibility of curing the prejudice through a continuance. *See, e.g., Marine Indus. Constr., LLC v. United States*, 151 Fed. Cl. 349, 368 (2020) (Rule 16); *Gilead Scis., Inc. v. United States*, 160 Fed. Cl. 330, 342–43 (2022). The government does not meet the standard of either rule.

First, the government has not shown diligence or justification. The government frames its motion with cases where parties found themselves surprised by new factual or legal developments. *See* Def.'s Mot. at 3–4 (quoting *Cellcast Techs., LLC v. United States*, No. 15-1307, 2019 WL 5959571, at *8–9 (Fed. Cl. Oct. 30, 2019); *Geneva Pharms. Tech. Corp. v. Barr Lab'ys, Inc.*, No. 98 CIV.861(DLC), 2005 WL 2132438, at *5 (S.D.N.Y. Sept. 6, 2005)). In those circumstances, where parties work to meet operative deadlines and then diligently pursue new discovery when the need arises, courts sometimes modify the schedule. *Cellcast,* 2019 WL 5959571 at *11; *Geneva,* 2005 WL 2132438, at *10–11; *see also Rubik's Brand Limited v. Flambeau, Inc.*, 329 F.R.D. 55 (S.D.N.Y. 2019). But here I see nothing legitimately new. An outline of the law and facts shows why.

To begin with, although the government observes that the summary judgment opinion "elucidated economic and cost-related aspects of the [economic waste] doctrine," Def.'s Mot. at 2, the government does not claim that the opinion changed the law or broke new ground. Rather, the opinion set out the existing law of economic

---

[1] "[This Court] examine[s] general federal law interpreting the scope of the corresponding Federal Rules of Civil Procedure as persuasive." *See Widdoss v. Secretary of the Dep't of Health & Human Servs.,* 989 F.2d 1170, 1178 n.7 (Fed. Cir. 1993).

waste, *see* Opinion & Order at 6–7, 9–11, which entitles a contractor to recover correction costs when "[1] the cost of correction is *economically wasteful* and [2] the work is *otherwise adequate for its intended purpose.*" *Granite Construction Co. v. United States*, 962 F.2d 998, 1007 (Fed. Cir. 1992) (emphasis added). Work is "adequate for its intended purpose" when it "substantially complie[s]" with contractual specifications. *Id.* A contractor's performance can be substantially compliant when it "departs in minor respects from that which ha[s] been promised," *Franklin E. Penny Co. v. United States*, 207 Ct. Cl. 842, 856 (1975); *see also Blinderman Constr. Co. v. United States*, 39 Fed. Cl. 529, 573 (1997), but not where it is "fundamentally less than [what the parties] had … bargained for." *Franklin E. Penny*, 207 Ct. Cl. at 857–58. All of that was settled before the summary judgment opinion.

Instead, the summary judgment opinion pointed to applications of the economic waste doctrine that the parties may not have considered. Title to Boland's work was originally supposed to be transferred to a company called Aqua, which was to manage the completed work on the Corps' behalf. Opinion & Order at 2. But because of Boland's breach, Aqua might not have been willing to accept title without some kind of guarantee from the Corps — in effect, a contract reassigning to the Corps some of the ownership risks that were originally supposed to go to Aqua. *Id.* at 4. The Corps decided to order Boland to correct its work instead. So if the Corps faced a choice of (1) ordering Boland to correct its work in exact conformity with the work specifications, or (2) accepting some of the risks that would originally have gone to Aqua, the question of whether the Corps' correction was economically wasteful depends partly on whether Option 2 would have been "fundamentally less" than what the Corps originally expected. *Franklin E. Penny*, 207 Ct. Cl. at 857–58. What would the cost have been to the Corps if — instead of ordering correction — it had negotiated a new contract with Aqua accepting the risks resulting from Boland's breach?

The parties did not squarely address that question at summary judgment. Boland appears to argue that the summary judgment opinion overlooked evidence that "the issue could have been dealt with 'in some contractual way.'" *See* Pl.'s Resp. at 7 n.3. According to Boland, because a contract between the Corps and Aqua "could have been negotiated … the cost to the Government of accommodating Aqua would have been nothing." *Id.* That non-sequitur misinterprets both the opinion and the economic realities. Even assuming a contractual solution was possible, it hardly follows that the necessary "accommodat[ions]" — *i.e.*, concessions by the Corps to Aqua — would have been costless to the government. As the opinion explained, the cost and feasibility of "accommodating Aqua" is the very question that the record left unresolved. Opinion & Order at 10–11 & n.8. Even assuming Boland is right that its

construction work was as good as what the contract technically specified, it does not necessarily follow that the Corps should have been economically indifferent about who would bear the risks of ownership. The facts are of course still to be proven at trial, but Boland's approach could confuse the issues in at least two ways: by conflating the *possibility* of securing a contract with the *cost* to the Corps of doing so, and by conflating the *engineering* of its work with the *economics* of the Corps' relationship with Aqua. Boland's argument thus underscores how superficially the parties have addressed the economic issue so far.

The parties were plainly aware of the option of reallocating risk from Aqua to the Corps. Boland in particular argued that the Corps should have taken that approach rather than order correction. *See* Pl.'s Mot. for Summ. J. at 36 (ECF 50); Pl.'s Resp. to Def.'s Mot. for Summ. J. at 11–12, 39 (ECF 64); Pl.'s Reply in Supp. of Mot. for Summ. J. at 13–14 (ECF 67). At several places in their briefs, the parties thus debated whether such a reallocation was legally possible, whether Aqua would have agreed to it, what Aqua might have demanded from the Corps, and related questions. *See also, e.g.*, Def.'s Mot. for Summ. J. at 7 n.5, 18–20 (ECF 55); Def.'s Resp. to Pl.'s Mot. for Summ. J. at 8 (ECF 63). Yet the parties never tried to compute a price tag.

Whether the economic question needs to be answered — and what the answer is — can wait for trial. *See* Opinion & Order at 10 (noting that the issue "might not be material"). But the fact that the parties circled around the question without crystallizing it in accurate economic terms suggests that the summary judgment opinion did not create a new legal or factual issue for the parties to consider. The government could, with diligence, have identified the question and developed expert opinions during the regular course of discovery.

Even if the summary judgment opinion clarified the law in ways that the parties did not expect, the government also does not appear to have been diligent in obtaining its new expert opinion. It has now been nine months since the summary judgment opinion issued. The government represents that funding for an expert was authorized "[s]oon after" this Court's order of September 20, 2022, but that the report was not completed until late April — *i.e.*, about seven months later. Def.'s Mot. at 3. In the Court's experience, parties that diligently seek expert analysis — including on complex topics — can obtain it in far less time. The government provides no justification for the delay.

Second, in addition to the delay itself, it appears that allowing the government to disclose a new expert would be prejudicial to Boland. Trial, as the parties are well aware, is approaching quickly. Courts often exclude evidence produced right before

trial as prejudicial to the nonmoving party. *See Prakhin v. United States*, 164 Fed. Cl. 440, 453 (2023); *see also Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 863 (9th Cir. 2014); *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 280 (5th Cir. 2009); *NutraSweet Co. v. X-L Eng'g Co.*, 227 F.3d 776, 786 (7th Cir. 2000).

The government notes that disclosures within three months of trial are not "irredeemably prejudicial regardless of the circumstances." *See* Def.'s Reply at 5. Perhaps so, but that is a straw man argument. If the government's motion were granted, Boland should have a fair opportunity to prepare its own economics expert if it wishes. But while the government has now had several months to prepare its expert report, trial is only two months away. Given how long the government took to prepare the proposed report, it would be inequitable, unfair, and prejudicial to compel Boland to prepare a response in so little time.

It does not help that the government mentioned the possibility of a report at various times since last fall, for Boland could not prepare its response (or fully evaluate the need for one) without seeing what the government ultimately produced. *See* Def.'s Reply at 3–5. Although the prejudice to Boland could in theory be cured by continuing the trial date, neither party has proposed a continuance, and Boland appears to prefer retaining the trial date. *See* Pl.'s Resp. at 6 & n.1.

Because I conclude that (1) the government was not diligent or justified in producing the new expert report, and (2) Boland would be prejudiced by the disclosure given that neither party proposed a continuance, I do not reach the probative value of the proposed report. I do observe, however, that the government's cases involving development of new evidentiary records after appeal and remand do not necessarily justify adding whatever material "the Court believes … will help it better reach factual determinations necessary to achieve correct decisions." Def.'s Mot. at 2–3 (citing *Alta Wind I Owner Lessor C v. United States*, 154 Fed. Cl. 204 (2021), and *Geneva Pharms.*, 2005 WL 2132438). It should go without saying that in an adversarial system, responsibility for developing the record lies with the parties. *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020). One logical result is that sometimes a court goes without information that would theoretically aid its decision making. Courts manage that problem by, for example, placing the burden of proof on one party or the other; adjusting the scope of legal conclusions to fit the facts presented; and applying rules of claim preclusion, issue preclusion, and interpretation of precedent to past decisions. Although a court should avoid depriving

either side of a fair procedural opportunity to present its case, suffice it to say that the government has had its opportunity here.

## CONCLUSION

For the foregoing reasons, the government's motion is **DENIED**.

**IT IS SO ORDERED**.

s/ Stephen S. Schwartz  
STEPHEN S. SCHWARTZ  
Judge